Sadtler *v.* Orton, Kent & Company, Appellants.

176

Argued March 18, 1932. Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*D. Alexander Wieland,* and with him *Joseph J. Brown* and *John Arthur Brown,* for appellants.

*Mercer B. Tate, Jr.,* and *Montgomery & McCracken,* for appellee.

OPINION BY CUNNINGHAM, J., July 14, 1932:

This is an action in trespass brought to recover damages which the plaintiff claims to have suffered through the negligence of the defendants, stock brokers, in failing to execute his order for the sale of certain stocks. The trial resulted in a verdict for the plaintiff. Defendants filed motions for a new trial and for judgment n. o. v.; the former was subsequently withdrawn and the latter overruled; from the judgment entered on the verdict defendants have taken this appeal. Their assignments are based upon the refusal of their point for binding instructions and the subsequent denial of their motion for judgment n. o. v.

There was abundant, and practically undisputed, testimony establishing these basic facts: On October 11, 1929, plaintiff telephoned an order to the Philadelphia office of the defendants to sell for him 100 shares of Commercial Investment Trust stock at $78.87½ per share. Defendants sent this order for execution to their New York agent on the curb exchange where the stock was then listed. New York exchanges were not open on October 12th or 13th. On the morning of Monday, the 14th, the stock of the Commercial In-

vestment Trust was transferred from the curb to the New York stock exchange and sold there as high as $79. Through some oversight, however, either on the part of the defendants or their agent on the curb, plaintiff's order was not transferred to the stock exchange, and consequently was not executed. Plaintiff received no notification of a sale on Tuesday morning, the 15th, and called the office of defendants for an explanation. He was then informed by their customers' man, Dill, that a mistake had been made and that he was entitled to an execution of his order, but that nothing could be done until the return of Charles T. Brown, the manager of the Philadelphia office, who was then out of town. While the defendants contested the issue of negligence in the court below, that question was submitted to the jury and decided against them and is not involved on this appeal. Uncontroverted expert testimony was received to the effect that, when an order is given to sell stock at a certain price, and the stock sells at 1/8 of a point over that price or better (as was the case here), the customer, under the rules of the exchange, is entitled to an execution of his order as a matter of right. No explanation was given for the failure of defendants, or their agents, to transfer the stock from the curb exchange to the stock exchange in time to take advantage of the quotation at which plaintiff desired to sell. Prima facie, plaintiff was entitled on October 15th to receive from defendants $7,887.50.

The substantial controversy arises out of events which occurred on, and subsequent to, October 16th; the parties disagree both as to what really happened and with respect to the inferences to be drawn from certain facts, if established. There was testimony on behalf of plaintiff from which the jury could reasonably find these facts:

Following the suggestion of Dill, plaintiff, on Oc-

tober 16th, had an interview with Brown, who also admitted that a mistake had been made, and that plaintiff was entitled to the execution of his order, but declared that if plaintiff should be paid the price at which the stock was ordered to be sold, it would have to come out of his (Brown's) pocket. Brown then suggested that plaintiff cancel his earlier order and put in a new order to sell at $82. Plaintiff objected that he could not afford to adopt this suggestion, since, if the stock went down, he would be called upon for more margin. To this Brown replied that he would protect plaintiff's account and would make certain that he would receive the benefit of an execution of his original order; the new order to sell at $82 was put in with this understanding. This testimony was corroborated by Dill, the customer's man, who was present at the interview. Plaintiff then got in touch with the Philadelphia office practically every day for the next few days, demanding an execution of his order to sell. Brown then referred him to Orton, the senior partner of the firm in New York. The latter informed him that the stock market was declining so rapidly that he had no time to talk about the sale, but as soon as conditions cleared up the defendants would make a settlement and would see that plaintiff received fair treatment. The next morning, October 20th, plaintiff left for New York and saw Orton personally. The latter seemed to know little about the transaction and talked to Brown over the telephone. Brown then suggested that plaintiff come back to Philadelphia and stated he would make an adjustment with him there. Plaintiff then returned to Philadelphia and at Brown's suggestion placed a new order, October 21st, to sell the stock at $69.50 a share, with the same understanding as before, i. e., that his account would be protected and that his right to have an execution of his original order would not be lost. Two days later still another order was placed

to sell the stock at $67.50, but the price continued to fall and on October 24th defendants sold out the stock at $57.62½, claiming that plaintiff had failed to maintain his margin requirements.

Defendants' contentions were that even if they had been negligent in failing to execute the original order to sell, they were relieved of liability by the subsequent selling instructions given by plaintiff with full knowledge of all the facts; and that if any promises were made by Brown to protect the plaintiff and to see that he received the benefit of an execution of the original order, they were made by Brown, not as defendants' agent, but on his own account and for his own protection. In support of their position they point out that when plaintiff first saw Brown on the 16th of October, Brown stated that if plaintiff received payment on his original order, he, Brown, would have to bear the loss himself; that various other mistakes had been made in the office, which cost him around $10,000; and that he could not afford any more.

As stated in the opinion of the court below supporting its refusal of judgment for defendants upon the whole record, the suggestion—that Brown's promises, if made, amounted merely to a personal undertaking upon his part and were not binding upon defendants —was not made either at the trial or upon the argument of the motion.

We are satisfied, upon an examination of the charge, that every issue raised by the pleadings and evidence was clearly, adequately and impartially submitted to the jury. The learned trial judge, BARNETT, P. J., specially presiding, after submitting the question of negligence, directed the jury to consider and determine three additional issues.

(a) Whether, as contended by defendants, plaintiff waived his right to insist upon payment of the amount he would have received if his original order

had been executed and gave the subsequent selling orders voluntarily and at his own risk; or, whether, as contended by plaintiff, he refrained from pressing his claim upon the assurance of Brown and Orton that he would be protected in it and, without waiving his rights, gave the subsequent selling orders upon the faith of their promises.

(b) Whether the promises were really made, and (c) if so, did Brown, as manager of defendants' Philadelphia office, have authority to make them.

The jury, by its verdict, determined each issue against defendants; with their initial negligence practically uncontested, the duty devolved upon them of sustaining the waiver by which they sought to avoid its legal effect. It would seem that if Brown had authority to agree that the original order would be honored, it makes little difference that one of the reasons for making such an agreement may have been his own protection. It is a fair inference that in accepting the promise plaintiff was relying, not upon Brown's personal credit, but upon the integrity of the brokerage house of which he was the main Philadelphia representative. The subsequent dealings with the firm indicate that Brown was the only one who knew anything about the transaction and that he was authorized to handle it as he could. This is not a case in which the third party should have realized that the agent was making the promises without consideration of his duty to his principals; as defendants were responsible for their original default, it was only natural that their agent should attempt to work out a plan which, if the market advanced, would protect them from loss. Under all the circumstances, a jury would be justified in concluding that plaintiff had the right to assume that the promise was made as an obligation intended to be binding upon the principals, even though it may have been actuated to some extent by personal motives.

By reason of the conflicting evidence upon material issues, the case was necessarily for the jury and, upon a review of the record in the light of the briefs, we are unable to sustain any of the assignments.

The case of Smith v. Hutton, 138 App. Div. N. Y. S. C. 859, cited by defendants, is authority only for the proposition that such negligence as is here charged may be waived by subsequent conduct; it does not apply to the present issues. The jurors in the case at bar were instructed, if they concluded plaintiff was entitled to recover, that the measure of his damages would be the difference between $7,887.50, the price at which defendants were instructed to sell, and $5,-762.50, the price for which the shares were finally sold, less commissions and plus interest; the verdict was for $2,386.75. There may be some question whether the action should not have been brought in assumpsit rather than in trespass. If the claim of the plaintiff had rested solely on negligence, the damages recoverable would have been the difference between the price at which he ordered the stock to be sold and the price at which he could have actually sold it within a reasonable time after learning of defendants' default. However, as defendants set up, and attempted to prove, a waiver, the issue actually tried was whether a binding promise was made by, or on behalf of, defendants, on October 16th, to see that plaintiff received the benefit of his initial order; upon this theory the measure of damages was correct. Since the award is in accord with the equities of the case, and as the form of action has not been questioned, the matter should not be permitted to affect our conclusion.

Judgment affirmed.